UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

In Re:                                                     Civil Action 05-2088(Lead)
Stone Energy Corporation Securities
Litigation                                               Judge Tucker L. Melançon

                                                              Magistrate Judge Methvin

**MEMORANDUM RULING**

Before the Court is a Motion For Judgment On The Pleadings filed by defendants Stone Energy Corporation, David H. Welch, James H. Prince and Kenneth H. Beer [Rec. Doc. 169] and by D. Peter Canty[1] [Rec. Doc. 172] ("Stone"). Also before the Court are El Paso Firemen and Policemen's Pension Fund's opposition to Stone's motion [Rec. Doc. 193] and Stone's reply memoranda [Rec. Doc. 196]. For the reasons that follow, the motion will be granted in part and denied in part.

*Background*

The Class in this action consists of all persons and entities who purchased or otherwise acquired shares of the common stock of Stone between May 2, 2001 up to and including March 10, 2006 and who were damaged thereby. Proposed class representative El Paso Firemen and Policemen's Pension Fund ("Lead Plaintiff" or the "Fund") is a public pension fund organized for the benefit of retired municipal police officers and fire personnel in the City of El Paso, Texas. The Fund purchased shares in Stone Energy Corporation during the

---

[1] Defendant Canty adopted the motion filed by Stone.

Class Period and suffered losses after Stone revealed that it had overstated its proved reserves and issued false financial results since early 2001. Stone brings this motion for judgment on the pleadings pursuant to rules 12(c) and 17(b) of the Federal Rules of Civil Procedure for dismissal of El Paso Firemen and Policemen's Pension Fund's Consolidated Class Action Complaint, asserting that Lead Plaintiff lacks capacity to bring this suit, and therefore, the Complaint should be dismissed with prejudice.

*Standard For Judgment On The Pleadings*

A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts. *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F .2d 74, 76 (5th Cir.1990). The court reviews motions for judgment on the pleadings solely on the basis of the allegations in the pleadings and accepts all allegations as true. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991). The court may grant judgment on the pleadings where it is beyond doubt that the nonmovant can prove no set of facts in support of his claim that would entitle him to relief and where material facts are not in dispute. *Nunley v. M/V Dauntless Colocotronis*, 696 F.2d 1141 (5th Cir. 1983); *Greenberg v. General Mills Fun Group*, 478 F.2d 254, 256 (5th Cir. 1973). The court must view the pleadings and draw all possible inferences in favor of the

nonmovant, and may not grant judgment unless, on the admitted facts, the moving party is clearly entitled to judgment. *Nunley*, 696 F.2d at 1143 n. 2. Where a complaint shows claims to be barred by the statute of limitations, the claims may be dismissed by a motion to dismiss or judgment on the pleadings. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

*Analysis*

Stone asserts that the Fund was created by Article 6243b of Vernon's Texas Civil Statutes, and under Texas law, the powers of such statutorily created governmental entities are strictly limited to those the Texas legislature confers upon them. Because the Fund's enabling statute does not include any provisions granting it the power to sue or be sued, Stone contends that the Fund has no capacity to bring this action and Lead Plaintiff's claims should be dismissed.

It is undisputed that "[t]he El Paso Firemen & Policemen's Pension Fund and its Board of Trustees are statutorily created by Article 6243b of Vernon's Texas Civil Statutes [which is captioned Firemen and policemen pension fund in cities of 500,000 to 600,000]." *City of El Paso v. Heinrich,* 198 S.W.3d 400, 405 (Tex.App.-El Paso, 2006) (citing Tex.Rev.Civ. Stat. Ann. art. 6243b (Vernon 2003); *see also, Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 728-29 (Tex.App.-Corpus Christi, 1994) ("Article 6243e, sections 3 and 3B established Boards of Firemen's Relief and

Retirement Fund Trustees in [Texas]"). In *Herschbach*, the Texas Court of Appeals held that the contract and tort claims brought by retired firefighters could not be maintained against the Board of the Corpus Christi Firemen's Relief and Retirement Fund which was created under Article 6243.[2] The *Herschbach* court looked to an opinion of the Texas Attorney General in determining that the Board "was in the nature of a public administrative body." *Id.* (citing Op.Tex.Att'y Gen. No. JM-926 (June 29, 1988), 1988 WL 406198) (finding that the board of trustees of the Austin Fire Fighters' Relief and Retirement Fund established under article 6243e.1 was a public administrative body). In holding that the public administrative body could not maintain its lawsuit, the *Herschbach* court stated,

> Texas law requires that public administrative bodies have statutory authority in order to sue or to become a defendant in a lawsuit. The supreme court, in upholding a decision that disallowed the Industrial Accident Board from joining in a suit, said that "[t]he right to sue and be sued has not been conferred upon ... [the board]. It is the general rule that a public administrative body cannot sue or be sued in the absence of statutory authority." Employing this rule, we find that the Board has no authority to sue or to allow others to sue it, except for those limited circumstances found in article 6243e, sections 22 and 24.[3]

---

[2] Article 6243e established Boards of Firemen's Relief and Retirement Fund Trustees in Texas. They were composed of city officials and elected members of the fire department. The Boards' basic duty was to administer the retirement program established under article 6243e. It had the power to receive, handle and control, manage and disburse the Fund. *Id.*

[3] The enabling statute of the Corpus Christi Firemen's Relief and Retirement Fund provided that entity with capacity to sue and be sued under two limited circumstances: (1) Section 22 "Requires the city attorney to 'represent the Board of Trustees of that city or town in all cases of appeal to the firemen's Pension commissioner by any claimant from the order or decision of such Board of Trustees,'"

*Id.* (quoting *Texas Employers' Ins. Ass'n v. Elder*, 282 S.W.2d 371, 376 (1955)).

The *Herschbach* court also noted that the enabling statutes of other pension funds under article 6243 contain "sue or be sued" provisions. *See, e.g.*, Tex. Rev. Civ. Stat., art. 6243e.1, § 12.08 (authorizing the board of firefighters relief and retirement fund trustees to recover by civil action money wrongfully paid out or obtained from the fund); Tex. Rev. Civ. Stat., art. 6243g-4, § 6(e-1) (authorizing the board of police officers pension system in certain cities to sue "on behalf of the pension system in any court with proper subject matter jurisdiction regardless of location" and giving the board the "sole authority to litigate matters on behalf of the pension system.").

Lead Plaintiff does not dispute that the Fund is an entity created by the Texas Legislature, but argues that the Court should broadly interpret Federal Rule of Civil Procedure 17(b)(3)(A) and find that the Fund is an "unincorporated association" which has capacity to sue "to enforce a substantive right existing under the United States Constitution or laws."[4]  Rule 17(b)(3)(A) states in pertinent part:

---

and (2) Section 24 "applies to the Board's authority to recover by civil action . . . any money paid out or obtained from the [f]und through fraud, misrepresentation, defalcation, theft, embezzlement, or misapplication." *Id.* The applicable statute creating the Fund in this case, article 6243b, contains no such parallel provisions.

[4] Under Texas law, "an 'unincorporated association' is defined generally as 'a body of individuals acting together for the prosecution of a common enterprise.' As such entities typically are loosely organized, written formalities are not required for membership; a person joins an association when-either expressly or tacitly-he is accepted as, and agrees to become, a member. The intent of both parties, the putative member and the association, is what governs. Whether a person is a member of an association is a question of fact." *Karl Rove & Co. v. Thornburgh,* 39 F.3d 1273, 1289 -1290 (5th Cir. 1994).

5

> (b) Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:
>
> (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;
>
> (2) for a corporation, by the law under which it was organized; and
>
> (3) for all other parties, by the law of the state where the court is located, except that:
>
> (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws

Lead Plaintiff maintains that because the federal court has exclusive jurisdiction over its claims arising under the Securities Exchange Act, the Court should enforce the protection of the federal securities laws by holding that the Fund is an "unincorporated association." In making this argument, Lead Plaintiff relies on several federal district cases which it describes as having "similar situations." The cases, however, are distinguishable from this action in that none of them involves a governmental entity created by a state legislature, such as the Fund in this case.[5] Lead Plaintiff has failed to demonstrate that the "unincorporated association" exception in Rule 17 applies to

---

[5] Lead Plaintiff cites three cases applying California or New York law, as well as cases involving private investment funds, a committee of chiropractic society without a charter, and various committees of ERISA-governed retirement plans. 29 U.S.C. § 1132(d)(1) of ERISA specifically provides that, "[a]n employee benefit plan may sue or be sued under the subchapter as a entity."

a governmental entity like the Fund.

Alternatively, Lead Plaintiff argues that it has capacity in this action because "claims for violations of the federal securities laws may not be impeded by any particular state's capacity laws." *R. 193, p. 20.* In support of this contention, Lead Plaintiff cites two cases from the district courts of New York, *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp 145, 149 (D.C.N.Y. 1984) and *Miller v. Steinbach*, 268 F. Supp. 255, 268 (S.D.N.Y. 1967).[6] The court finds the *Glusband* case inapposite to the issue before it. There, the court held that the receiver of a limited partnership had capacity to bring its Securities Act claims because it was a "partnership or unincorporated association which has no capacity to sue under the law of the state" as allowed under Rule 17(b). In *Miller,* the court held that the application of a Pennsylvania state statute under which plaintiff, a shareholder in a merged company, lacked capacity to bring a derivative action would be a "grossly inequitable decision." Under the circumstances of that case, the court stated, "where an action is based on the federal securities laws, state substantive or procedural laws may not impede the application of the federal statute."

Lead Plaintiff fails to provide any relevant jurisprudence supporting its assertion

---

[6] Lead Plaintiff also cites two cases involving CERCLA claims and noting CERCLA's "preemptive power '[n]otwithstanding any other provision or rule of law' 42 U.S.C. § 9607(a)." The Court finds that the holdings in these cases are irrelevant to the issue before it.

that the Court should adopt the reasoning of the court in *Miller*. Stone contends that *Miller* is in contrast to Fifth Circuit jurisprudence. In *Meyers v. Moody,* 693 F.2d 1196, 1205 (5th Cir. 1982), the Fifth Circuit stated that "[t]he capacity of a receiver to sue in federal court is governed by the law of the forum state" and therefore held that the receiver derived his capacity to sue on claims under § 10(b) of the Securities Exchange Act under the laws of the appointive state. In *Jacobs v. Adams*, 601 F.2d 176, 178 (5th Cir. 1979), the court held that under the provisions of Rule 17(b), the executors' capacity to bring suit on § 14 claims of the Securities Exchange Act was determined by the law of the state of his domicile. Finally, in *Smallwood v. Pearly Brewing Co.*, 489 F.2d 579, 592 n.12 (5th Cir. 1974), the Fifth Circuit considered the capacity of a shareholder of a merged corporation, which was no longer a corporate entity, to assert a claim under the Securities Exchange Act, § 10(b). The court stated that, "[c]apacity of a corporation to sue or be sued in federal court is determined by the law of the state in which it was organized. F.R.Civ.P. 17(b)." *Id.* While the cited cases may not address the *Miller* court's holding that precluding a shareholder from bringing a derivative action would be a "grossly inequitable decision," the Court finds that the facts of *Miller* are distinguishable from this case for a number of reasons, primarily because the matter at bar involves a state created entity rather than an individual shareholder.

Lead Plaintiff next argues that the *Herschbach* court acknowledged that the Texas Trust Code could apply to government pension plans, and because § 113.019 of the Trust Code authorizes trustees to "compromise, contest, arbitrate, or settle claims of or against the trust estate or the trustee, the Fund has express statutory authority to pursue legal claims for recovery of Fund assets. *R. 193* (citing Vernon's Texas Stat. Property Code, § 113.019). However, as set out heretofore, the *Herschbach* court distinguished the application of the Trust Code, which could apply to government pension plans, from the public administrative body's enabling statute which the court held must confer upon the body "[t]he right to sue and be sued." *See also*, *Texas Employers' Insurance Association v. Elder*, 282 S.W. 2d 371, 377 (Tex. 1955)("public administrative body cannot sue or be sued in the absence of statutory authority"); *Tooke v. City of Mexia*, 197 S.W.3d 325, 334 (Tex. 2006)("governmental entity without the power to sue and be sued cannot be a party in litigation").

Stone maintains that plaintiff is judicially estopped from arguing that it has the power to sue and be sued under Texas law because it argued to the contrary in *City of El Paso v. Heinrich,* 198 S.W.3d 400, 405 (Tex.App.-El Paso, 2006). In *Heinrich*, a widow of a policeman killed in the line of duty argued that the Fund should not be permitted to reduce the pension benefits paid to her and her son. Stone points to the Fund's Reply Brief in *Heinrich* in which the Fund invoked the limitations of its

enabling statute and argued that the case should be dismissed because "Article 6243b does not include a provision allowing it to 'sue and be sued' or to 'plead and be impleaded.'" *R. 169, p.6, Exh. 1 to Declaration of Preston*, *Heinrich Reply Brief at p. 13*. There, the Fund distinguished itself from its co-defendant, the City of El Paso, by arguing that Section 51.013 of the Texas Local Government Code, which grants municipalities the authority to "sure and be sued, implead and be impleaded, and answer and be answered," does not apply to a pension fund or its board. *Id. at pp. 13-14*. The Fund argues that it is not judicially estopped from opposing Stones's motions based on "one sentence in a single reply brief." *R. 193*.

In order to determine whether judicial estoppel applies, the following factors must be met: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 332 (5th Cir. 2007). Based on the limited record before it, the Court cannot determine whether or not the Fund should be judicially estopped from arguing that it has the capacity to file suit in this case based on its filing in the *Heinrich* case. However, that is of no moment as the Court found that under Texas law, a public administrative body

10

like the Fund cannot sue or be sued in the absence of explicit authority from its enabling statute.

Finally, Lead Plaintiff argues that Louisiana law, as the "law of the state where the court is located" also supports the Fund's capacity. Lead Plaintiff has failed to cite any relevant jurisprudence that Louisiana law should govern the capacity of an entity created by Texas statute to sue or be sued in federal district court. Even assuming *arguendo*, that Louisiana law applies, Louisiana's conflicts-of-laws provisions would require the application of Texas law rather than Louisiana law to the question of the Fund's capacity. *Cambre v. St. Paul Fire & Marine Ins. Co.,* 331 So.2d 585 (La.App., 1976) (finding that in the cases of an allegedly dissolved Mississippi partnership, Mississippi law was applicable in determining character of partnership and rights and liabilities of its members).

La. Civ.Code art. 3542 reads in pertinent part:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

"The substance of both choice-of-law articles, respectively governing torts and contracts, require substantially the same determination by the district court. 'Both articles require the courts assess which state's policies would be most seriously

impaired if its laws were not applied to that issue and both articles direct the court to evaluate the strength and pertinence of the relevant [state] policies in light of ... the pertinent contacts of each state to the parties.'" *Cambridge Toxicology Group Inc. v. Val Exnicios,* 495 F.3d 169, 176 (5th Cir., 2007) (internal citation omitted). Here, Texas created the Fund, and Texas' courts have demonstrated Texas' interest in limiting the powers of such entities created by statute to those powers actually conferred by statute. Lead Plaintiff has provided no support for applying Louisiana law other than Louisiana is "the law of the state where the court is located." In this case, Texas law applies to the Fund which was created by Texas statute.

*Conclusion*

For the foregoing reasons, the Court therefore holds that Lead Plaintiff in this action does not have capacity to sue or be sued. However, based on Rule 17(a) of the Federal Rules of Civil Procedure and the pertinent jurisprudence, this action should not be dismissed as requested by Stone.[7] Rather, by amendment of the complaint or by intervention, the members of the original class will have an opportunity to name a new and proper class representative to enter the case and represent the interests of the

---

[7] Rule 17(a) states, "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

subclass as "real parties in interest." *See, Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir., 1981) ("[e]fficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass").