In Re:                                         Civil Action 05-2088(Lead)

Stone Energy Corporation Securities

Litigation                                     Judge Tucker L. Melançon

                                               Magistrate Judge Methvin

**MEMORANDUM RULING**

Before the Court are a Motion For Appointment As Lead Plaintiff [Rec. Doc. 256]

filed by the City of Knoxville Employees' Pension System ("Knoxville") and the oppositions

thereto filed by defendants, Stone Energy Corporation, David H. Welch, James H. Prince and

Kenneth H. Beer [Rec. Doc. 267] and by defendant D. Peter Canty [Rec. Doc. 268]

("Stone"). For the reasons that follow, the motion will be granted.

*Background*

In order to memorialize in summary form the procedural morass of this proceeding, the

Court will set out the parties' voluminous filings, which have at times dominated the Court's

docket. On March 17, 2006, the Court entered an order: (1) appointing El Paso Firemen and

Policemen's Pension Fund ("El Paso") as Lead Plaintiff in this matter pursuant to Section

21D(a)(3)(B) of the Securities Exchange Act of 1934; (2) approving the appointment of the law

firm of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the Class; and (3)

consolidating all actions related to this action. *R.* 16. Thereafter, pursuant to the Court's order,

El Paso filed a Consolidated Class Action Complaint on June 16, 2006. *R.* 61. On September

13 and 15, 2006, defendants filed motions to dismiss the Consolidated Class Action Complaint,

R. 68; 75; 86, which the Court converted into motions for summary judgment. *R*. 79. In turn, the parties filed numerous pleadings related to the motions for summary judgment: (1) El Paso's objections to the motions, *R*. 76; (2) defendants' replies thereto, *R*. 80; (3) defendants' response to the conversion, *R*. 81; (4) defendants motion for reconsideration of the conversion, *R*. 88; and, (5) El Paso's response to the motion for reconsideration, *R*. 94. On October 1, 2007, the Court adopted the magistrate judge's report and recommendations, granting the motions in part, dismissing specifically delineated claims, but denying in part as to all other claims asserted by El Paso. *R*. 107; 117. Thereafter, defendants filed a motion for Certificate of Appealability to which El Paso objected. *R*. 121; 123. The Court denied the motion for Certificate of Appealability on November 20, 2007. *R*. 124.

On March 13, 2008, in a scheduling conference conducted pursuant to the parties' joint motion, the Court bifurcated the class certification and merits discovery and ordered counsel for El Paso to file a motion for class certification within 60 days of the order. *R*. 137. On May 12, 2008, El Paso filed its Motion to Certify Class. *R*. 165. Defendants filed their oppositions to the motion on June 27, 2008, including *Daubert* motions to exclude the reports and testimony of El Paso's expert, *R*. 179; 180; 181; 185, and El Paso filed responses thereto on July 22, 2008, *R*. 199; 200; 202; 203; 204. Defendants filed a reply on July 24, 2008. *R*. 205. Additionally, both parties filed notices of recent authority and responses thereto from August 12 through September 22, 2008. *R*. 216; 222; 223; 225; 227. Moreover, El Paso filed a motion to compel the defendants to produce the "event study prepared by defendants' loss

causation 'expert'" in connection with defendants' opposition to El Paso's motion for class certification. *R.* 211. In response to the motion to compel, defendants filed an opposition, *R.* 215, and El Paso filed a reply on August 26, 2009, *R.* 217.

From June 11 through July 17, 2008, during the period in which the parties were submitting filings related to El Paso's motion to certify the class, defendants filed motions for judgment on the pleadings contending that El Paso lacked capacity to sue or be sued and as a result thereof must be dismissed as Lead Plaintiff. *R.* 169; 172. El Paso filed responses in opposition and defendants filed replies. *R.* 191; 192; 195; 197. During that time frame, defendants also filed motions to amend their answers to the Consolidated Class Action Complaint. *R.* 168; 171. In turn, El Paso filed oppositions thereto and defendants filed replies. *R.* 193;197; 198.

Prior to the scheduling conference which lead to the filings related to El Paso's motion to certify the class, on March 6, 2008, El Paso filed a Motion to Compel Production of Purportedly Privileged Documents which was set before the United States Magistrate Judge assigned to this matter. *R.* 130. Upon considering defendants' oppositions, including multiple affidavits, *R.* 151; 152; 153; 154; 155; 156, and El Paso's reply, *R.* 158, the Magistrate Judge entered a ruling on August 14, 2008, granting plaintiff's motion in part and denying the motion in part. *R.* 213. In response to the ruling, on August 27, 2009, defendants filed a motion to stay the ruling as well as an appeal with the Court. *R.* 218; 219. El Paso opposition and defendants reply were filed as of August 23, 2008. *R.* 224; 234. On October 17, 2008, the Court ordered

defendants to submit the portions of the contested documents which it contended were privileged for in camera inspection by the Court. *R.* 236. Defendants filed the notice of their submission on October 23 and El Paso filed a response to the notice on October 28, 2008. *R.* 237; 238. On November 4, 2008, the Court issued its ruling reversing in part and affirming in part the Magistrate Judge's order. *R.* 241. El Paso filed a motion for leave to file its motion for reconsideration, *R.* 242, which the Court denied on December 3, 2008, *R.* 244.

Thereafter, by Memorandum Ruling and Judgment filed February 27, 2009, the Court granted defendants' motion for judgment on the pleadings against El Paso, finding that El Paso lacked the capacity to sue or be sued, *R.* 249, 250, and afforded leave for members of the alleged class to enter the case and represent the interests of the class. Knoxville was the only entity to timely file a motion moving for appointment as Lead Plaintiff.

*Analysis*

In the motion before the Court, proposed class representative Knoxville asserts that it is a proper lead plaintiff as the Class member is "a large institutional investor" ... "having purchased over 31,000 shares of the common stock of Stone Energy Corporation ("Stone") during the Class Period." In its opposition to Knoxville's appointment, Stone argues that the Complaint should be dismissed with prejudice because there is no longer a "named plaintiff" nor a certified Class. Stone further argues that Knoxville lacks capacity to sue or be sued and therefore lacks capacity to move for appointment as lead plaintiff.

Stone's opposition to Knoxville's appointment as lead plaintiff centers on two separate

grounds: (1) the Court's inability to appoint a new lead plaintiff based on lack of a live claim and (2) Knoxville's inability to become a party based on the restrictions contained in its enabling state statute. Knoxville contends the Court has already ruled that it indeed has the power to appoint a new lead plaintiff in spite of its silence on class certification; it likewise contends that its enabling state statute expressly allows it to sue. Each argument will be considered in turn.

*1. Whether a Lead Plaintiff May Be Appointed*

Stone first argues that the dismissal of El Paso as the lead plaintiff before class certification necessarily requires dismissal of the entire case because there is no legally cognizable party to continue pursuing the action. Knoxville counters that the Court has already twice denied dismissal and has expressly allowed for another party to come forward. Stone asserts that a "putative class only 'acquire[s] a legal status separate from the interest asserted by the [named plaintiff]' after a putative class is certified by a court pursuant to Rule 23 of the Federal Rules of Civil Procedure. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)." *R. 267.* Thus, Stone concludes, a putative class cannot stand alone in litigation – its legal status as a party derives from, and rises and falls with, the named lead plaintiff.

In support of this argument, Stone relies primarily on *Brown v. Sibley*, 650 F.2d 760 (5th Cir. 1981) which states in part:

> Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises. This

5

constitutional threshold must be met before [a class certification decision is reached]. … [B]ecause individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny the class for inadequate representation or to allow other class representatives to step forward. This dismissal should take place before class certification issues are ever reached. At that stage of the proceedings, no preclusive effects attach so as to bar a subsequent action by other class members who themselves have standing to represent the putative class …

*Brown*, 650 F.2d at 771. Therefore, Stone argues that because the Court has dismissed the lead plaintiff and denied as moot the class certification, if the putative class was represented solely by El Paso, it has no party through which to legally enforce its claims under the Consolidated Complaint.

In *Brown*, the court found that the named plaintiffs and others similarly situated who filed a class action based on violations of the Rehabilitation Act of 1973, ¶ 504 , had no right to bring their action, as none could show that "that they were excluded from participation, denied any benefits, or subjected to discrimination" as required under the federal statute.[1] The court stated, "[t]hey are not members of some potential class of people who were excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under programs or activities covered by section 504. Thus, in alleging discrimination under section 504, named plaintiffs are attempting to represent a class of which they are not members. 'A person simply cannot represent a class of which he is not a member.'" *Brown* at 770. As none of the plaintiffs had standing, the court

---

[1] The *Brown* plaintiffs sued under the Rehabilitation Act of 1973, ¶¶ 503 and 504 as amended 29 U.S.C.A. § 793.

dismissed the action.  Unlike *Brown,* this action was filed by plaintiff Robert J. Wieland,

individually and on behalf of all others similarly situated, based on his purchase of Stone

Energy securities during the Class Period and his subsequent alleged damages.  *R. 1, ¶ 9.*

Thereafter, actions were filed on behalf of other plaintiffs, individually and on behalf of all

others similarly situated.  05-CV-2109, *Meyer v. Stone Energy Corp, et al;* 05-CV-2220,

*Holzrichter v. Stone Energy Corp., et al.*[2]  These actions were consolidated by El Paso on

June 16, 2006.  *R. 61, Consolidated Class Action Complaint .*   There is no question, and

Stone does not assert otherwise, that Wieland, Meyer and Holzrichter have standing in this

action.  Thus, Stone's reliance on *Brown* is misplaced.

Stone also points to the case law discussing situations where the lead plaintiff's

claims became moot at some point after filing the complaint but before class certification.[3]

In *Zeidman,* two plaintiffs filed a motion for certification of a class action. Prior to the court

ruling on certification, the defendants tendered the named plaintiffs the maximum amount

of their personal claims and moved to dismiss the action for mootness. The plaintiffs

rejected the tender but the court dismissed their personal claims and dismissed the entire

action.  *Id*. at 1036. Upon review, the Fifth Circuit considered whether a purported but

---

[2]  Individual derivative complaints were also filed as related actions.  05-CV-2166, *Farer v. Stone, et al*; 05-CV-2167; *Fisk v. Stone, et al*; 06-CV-0171;  *Joint Pension Fund, Local No. 164, I.B.E.W v. Stone, et al.*

[3]  Stone cites the following cases: *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir. 1981), *Lynch v. Baxley,* 651 F.2d 387, 388( 5th Cir. 1981)*,* and *Bailey v. Cumberland Cas. & Surety Co.*, 180 Fed. Appx. 862, 865 (11th Cir. 1006).

uncertified class action should be dismissed for mootness upon tender to the named plaintiffs of their personal claims, despite the existence of what it characterized as "a timely filed and diligently pursued pending motion for class certification." *Id*. at 1041. The court held that the central issue was whether the district court had before it some plaintiff with a personal stake in the controversy and concluded that the named plaintiffs still had a personal stake in the controversy, despite their personal claims having been paid, because they (1) asserted an economic interest in the certification issue and (2) vigorously advocated their right to class certification. *Id*. at 1043. Finding that plaintiffs had standing to appeal the certification issue, the court further concluded that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, "at least, when ... there is pending before the district court a timely filed and diligently pursued motion for class certification." *Id*. at 1051. The *Zeidman* court recognized that a suit brought as a class action must, as a general rule, be dismissed for mootness when the personal claims of named plaintiffs are satisfied and no class has been certified. *See id.* at 1045. However, the Court held that this rule, "must yield when the district court is unable to rule on class certification before individual claims of named plaintiffs become moot." *Id*.

*Zeidman*, while analogous, does not directly address the issue presented in this case – a lead plaintiff pursuing consolidated class action claims without standing to do so. Because standing and mootness differ in important respects[4], the jurisprudence on mootness

---

[4] *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191-92 (2000) ("Standing doctrine functions to ensure, among other things, that the scarce resources of

is not dispositive of this case. Contrary to Stone's assertions, Fifth Circuit authority does not mandate a dismissal of this case.

Stone further attempts to characterize the complaint filed by El Paso as an amended complaint which superseded all prior complaints, primarily on the basis of El Paso's failure to "refer to the individuals that filed the original complaints in this matter." *R. 267*. Then, citing two Fifth Circuit cases, *Washington v. M. Hanna Const. Inc.*, 299 Fed. Appx. 399 (5th Cir. 2008) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") and *King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) (same), Stone claims that this failure essentially extinguished the consolidated complaints by merging them together in El Paso's "amended" complaint. This, in turn, would deprive the putative class of a party able to litigate its position in the "case or controversy" at bar, consequently removing this Court's subject matter jurisdiction because the constitutional requirement of standing would not be met. Because the Court finds the complaint filed by El Paso, *R. 61* to be "consolidated", as its caption declares, rather than "amended", as Stone asserts, the issue of consolidation in the context of class actions must be addressed.

Consolidation is a tool used by courts for efficiency purposes, not a method of formalistic legal maneuvering to prejudice a party or create delays in hearing otherwise

---

the federal courts are devoted to those disputes in which the parties have a concrete stake. In contrast, by the time mootness is an issue, the case has been brought and litigated, often [ ] for years. To abandon the case at an advanced stage may prove more wasteful than frugal.").

legitimate complaints. "A trial court has managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977), *citing Landis v. North American Co.,* 299 U.S. 248, 254 (1936). "The trial court's managerial power is especially strong and flexible in matters of consolidation." *In re Air Crash Disaster*, 549 F.2d at 1013. In the context of civil procedure, the word "consolidate" means "[t]o combine, through court order, two or more actions involving the same parties or issues into a single action … ." *Black's Law Dictionary*, 9th ed., p. 350 (2009). Parties do not lose their pre-existing right to sue based solely on consolidation. Absent a party's formal dismissal by the Court or a voluntary dismissal by the party itself, a legitimate party does not simply disappear. "'[C]onsolidation does cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other.'" *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 287 (5th Cir. 1984), *quoting McKenzie v. United States,* 678 F.2d 571, 574 (5th Cir. 1982). Moreover, "parties may not by consolidation … be deprived of some substantive right available to them in an individual suit now consolidated." *Harcon Barge* at 287. Thus, courts have rejected the theory of consolidation as a merger of substantive claims; rather, it is a procedural mechanism to facilitate judicial efficiency.

However, the question remains of what must be done with the leaderless putative

class.  Stone cites *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) for the proposition that the lack of a viable individual claim disallows intervention of another party. Knoxville counters that the Court expressly invited putative class members to come forward to serve as lead plaintiff.  Both arguments fail to precisely describe the Court's prior ruling on the issue.  When the Court dismissed El Paso as lead plaintiff for lack of standing, the Court did not dismiss the underlying class actions suits brought by the individual plaintiffs prior to consolidation.[5]  *R.* 249-250.  Dismissal of the entire consolidated suit would be both wasteful of judicial resources and of the parties' time, energy, and money spent litigating the case thus far which the Court must assume, based on the record, has been considerable. *See, e.g., Mullaney v. Anderson*, 342 U.S. 415, 417 (1952) (recognizing notions of judicial efficiency in allowing plaintiff without standing to substitute proper plaintiff under Rule 21 of the Federal Rules of Civil Procedure; culmination of trial with plaintiff lacking standing did not prejudice defendant, and re-filing of complaint by proper plaintiff would result in needless waste); *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981) ("Efficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass.").  Thus, the Court finds that replacement of a lead plaintiff will neither prejudice Stone nor waste judicial resources but in fact will be the best use of judicial resources.  Rather, it will allow the case to proceed in as timely a manner as possible, 3 years, 9 months and 24 days after the initial

---

[5] The Court denied as moot El Paso's motion to certify the class in light of El Paso's lack of capacity, in order for the newly appointed lead plaintiff to file its own motion for class certification.

filing of this action.

The parties both attempt to either rely on or distinguish two particular cases – *Ford v. U.S. Steel Corp.*, 638 F.2d 753 (5th Cir. 1981) and *In re Currency Conversion Fee Antitrust Litigation*, 2005 WL 3304605 (S.D.N.Y., Dec. 7, 2005). Knoxville claims that these cases confirm the Court's ability to replace class representatives of putative classes; Stone asserts they indicate that class certifications must be made before substitutions can occur. The truth is somewhere in the middle: *Ford* involved a putative class action under Title VII that was first certified, then decertified; the lead plaintiff was dismissed, and the rest of the case was dismissed by the district court. *Ford*, 638 F.2d at 754. The Fifth Circuit reversed and allowed another class representative to step forward. *Id.* at 755. The implicit reasoning behind the reversal was equitable. The court found that after the class was initially certified, it may "work an injustice" (not to mention a waste of judicial and party resources) to begin anew, especially once a putative lead plaintiff had already been named and the case had moved forward. *Id.* at 754, 761. Similarly, the *Currency Conversion* court certified an entire class, then de-certified a particular subclass. The court implicitly found it inequitable to require the aggrieved subclass to re-file a complaint and begin the litigation anew. *Currency Conversion*, 2005 WL 3304605 at *6. Since the subclass had relied on the initial class certification, a subsequent change in its status should not require starting over. *Id.*

Just as the Fifth Circuit in *Ziedman, Ford and Lynch* has allowed suits to go forward

by implicitly recognizing the potential inequities of dismissal, so too does this Court recognize the potential inequities of dismissing the current putative class members as the reason for allowing a replacement lead plaintiff. Just as the classes in those cases relied on the certification process, the original individual plaintiffs in this case, who undoubtedly have standing, have relied on the Court's consolidation of their complaints and its appointment of El Paso as lead plaintiff.[6] Should the Court dismiss this case in its entirety, the other plaintiffs would presumably still be free to bring a class action against Stone[7], and Knoxville would presumably still be eligible to become lead plaintiff. To create an opportunity for identical complaints to be filed by identical parties by using the same arguments presented in the same briefs would be senseless, to say nothing of wasteful.

The Court finds that the proper means of addressing this problem is simply a substitute lead plaintiff. Class certification has not yet been addressed. Because of the voluminous filings by the parties, this case, after almost four years seems old by most standards, is actually still in its infancy.[8] Appointing a replacement both recognizes the

---

[6] It should be noted that, at least in consolidated class actions, the term "lead plaintiff" arguably takes on a meaning apart from "named plaintiff," which would remove the possibility that dismissing a lead plaintiff might create constitutional standing concerns. *In re Initial Public Offering Securities Litigation*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("*In re IPO I*") ("[T]he only responsibility explicitly given to lead plaintiffs by the PSLRA is the power to select and direct class counsel. Nowhere is it suggested that the concept of 'lead plaintiff' was intended to be coterminous with 'named plaintiffs' or 'class representatives.'") (internal citations omitted).

[7] The Court 's ruling does not address the potential applicability of any statute of limitations as a possible bar to beginning the suit anew should it be dismissed.

[8] *See* Rec. Doc. 194 (requiring parties to gain Court's approval before filing new motions).

potential legitimacy of the underlying claims, works no prejudice on the putative class members, keeps both parties from having to relitigate the issues previously resolved, and conserves precious judicial resources that would otherwise be spent rehashing the same motions.  Suffice it to say that standing *was* initially obtained in this suit.  In fact, it was obtained in three independent and sufficient ways:  from the three individual plaintiffs' complaints prior to consolidation.  As consolidation does not operate to invalidate the underlying claims, but only acts as a procedural streamlining of otherwise separate and distinct cases, Stone has failed to demonstrate either legal or practical support for outright dismissal, particularly at this stage of the litigation, given its history. [9]

### 2. Whether Knoxville Has Capacity To Serve As Lead Plaintiff

As to Stone's alternative argument – that Knoxville Pension *System* may not sue, even if the Knoxville Pension *Board* may – it has been mooted by Knoxville's affidavit, submitted on behalf of the Pension Board by its appointed officer, which makes clear that the Pension Board will be the actual party to serve as lead plaintiff.  Both the plain text of the Pension Board's enabling statute and its construction by Tennessee courts, as well as Stone's admittance, make clear that the Knoxville Pension Board will not suffer the same defects as did El Paso.  *See, e.g.,* Knoxville, Tenn. Charter art. XIII, div. 3, § 1350.2 (2009) ("The pension board may contract, sue and be sued in the name of the City of Knoxville

---

[9] *See In re Initial Public Offering Securities Litigation*, 2004 WL 3015304, at *3 (S.D.N.Y., Dec. 27, 2004) ("*In re IPO III*") (finding dismissal "too harsh a penalty" and allowing joinder of real parties under Rule 17(a)(3) where plaintiffs' counsel failed to investigate whether named plaintiffs had their claimed legal status.)

Pension Board."); *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001) (allowing municipal government to exercise claimed power if "the power is granted in the 'express words' of the statute … or charter creating the municipal corporation"). Thus, the Knoxville Pension Board has clear power to litigate this case. Moreover, it is the type of institutional investor which the PSLRA prefers[10], and it was the only timely applicant to file a motion to become lead plaintiff by the Court-appointed deadline of April 13, 2009.

Finally, Knoxville requests that the current Co-Lead Counsels and Liaison Counsel remain intact. For the reasons stated in the Court's original Order appointing them to their respective capacities, *R*.16, the Court once again appoints Bernstein Litowitz Berger & Grossmann LLP as Co-Lead Counsel and Morrow, Morrow, Ryan & Bassett as Liaison Counsel. The Court further appoints Barroway Topaz Kessler Meltzer Check LLP as Co-Lead Counsel.

*Conclusion*

For the foregoing reasons, based on the record of this proceeding, the Court will grant Knoxville's Motion for Appointment as Lead Plaintiff insofar as it replaces El Paso with City of Knoxville Employees' Pension Board as Lead Plaintiff and reappoints the aforementioned law firms as counsel for Lead Plaintiff.

---

[10] *See Tarica v. McDermott Int'l, Inc.*, No. Civ. A. 99-3831, 2000 WL 377817, at *5 (E.D. La., Apr. 13, 2000) (J. Vance) (finding that "the PSLRA specifically encourages the appointment of institutional investors").